UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMMIE S. SIMMONS,

      Petitioner,

vs.                             Case No. 3:19-cv-89-HES-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

## I.  INTRODUCTION

Petitioner Jammie S. Simmons is proceeding pro se on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  He challenges his state court (Putnam County) conviction for aggravated assault on a law enforcement officer, possession of a firearm by a convicted felon, and resisting arrest without violence.  Id. at 1. Respondents filed a Response to Petition (Response) (Doc. 7).[1]  Petitioner filed a Reply to Response to Petition (Doc. 8).  See Order (Doc. 5).

_____

[1] Respondents filed an Appendix (Doc. 5).  The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  The Court will hereinafter refer to the Exhibits contained in the Appendix as "Ex."  For the Petition and Response, the Court references the page numbers assigned by the electronic filing system.

Two grounds are raised in the Petition: (1) ineffective assistance of trial counsel for failure to object to the state's amended information, and (2) ineffective assistance of trial counsel for informing Petitioner that Officer Yeomans could not be impeached by his prior inconsistent statements. Respondents calculate the Petition is timely. Response at 5-6.

Although the Petition is not a model of clarity, the Court considers the two claims of ineffective assistance of counsel raised in the Petition as outlined above. Of note, Petitioner entered a no contest plea and is serving concurrent 10-year prison sentences with 3-year minimum mandatory terms for aggravated assault on a law enforcement officer (firearm) and possession of a firearm by a convicted felon, both second degree felonies, followed by 5 years of probation on each count.[2] Ex. KK; Ex. LL. Although not raised by Respondents, it is apparent that the concurrent sentence doctrine would be applicable to this case. See Padgett v. United States, 791 F. App'x 51, 55 (11th Cir. 2019) (per curiam) (finding the concurrent sentences doctrine applies both to convictions and sentences), cert. denied, 140 S. Ct. 2731 (2020). "As a general rule, the concurrent sentence doctrine establishes that the existence of

---

[2] Petitioner was not in custody on count three when he filed his federal Petition in 2019. Petitioner received time-served on count three; therefore, the Court does not have jurisdiction over the judgment and sentence for the conviction of resisting an officer without violence, a misdemeanor.

one valid conviction may make unnecessary the review of other convictions when concurrent sentences have been given, provided there are no adverse collateral consequences to a defendant as a result of the concurrent sentence." United State v. Hudacek, 24 F.3d 143, 145 n.1 (11th Cir. 1994) (citing United States v. Caldwell, 776 F.2d 989, 1006 n.21 (11th Cir. 1985)). This is a tool of judicial convenience, exercised at the court's discretion. United States v. Fuentes-Jimenez, 750 F.2d 1495, 1497 (11th Cir. 1985) (per curiam), cert. denied, 476 U.S. 1160 (1986). The two grounds raised in the Petition go to Petitioner's conviction for aggravated assault on a law enforcement officer (count one). The criminal conviction for that offense, and any other collateral consequences related thereto, are wholly subsumed by those conferred by the conviction for possession of a firearm by a convicted felon (count two). There is no special monetary assessment as to each count, consequently, there is no requirement that the conviction be reviewed to address possible collateral consequences due to a special assessment. See Willits v. United States, 182 F.Supp.3d 1278, 1282 (M.D. Fla. 2016) ("This doctrine normally applies unless it appears that the challenged convictions will cause additional, adverse collateral consequences for the Petitioner."). See also Ray v. United States, 481 U.S. 736, 737 (1987) (per curiam) (same); United States v. Witek, 61 F.3d 819, 825 n.8 (11th Cir. 1995), cert. denied, 516 U.S. 1060 (1996) (same).

Indeed, the record shows the trial court only imposed standard costs and fees. Ex. R at 16; Ex. U at 1-5.

Based upon a thorough review, the Court finds Petitioner's release date would not be affected by the additional conviction of aggravated assault on a law enforcement officer (count one). If the Court were to apply the concurrent sentence doctrine, there is nothing in the record which suggests that any other adverse collateral consequences, such as eligibility for parole, will be suffered as a result of the Court's decision to apply the doctrine and decline to address the challenge to count one, the conviction for aggravated assault on a law enforcement officer, on its merits. See United States v. Bradley, 644 F.3d 1213, 1293 (11th Cir. 2011) (recognizing that only when the defendant would suffer actual adverse collateral consequences from an unreviewed conviction does the doctrine of concurrent sentence not apply), cert. denied, 566 U.S. 986 (2012). Therefore, applying the concurrent sentence doctrine, the Court declines to review Petitioner's challenge to his conviction for aggravated assault on a law enforcement officer.

In the alternative, for completeness, the Court will address both claims of ineffective assistance of trial counsel raised in the Petition. The Court's analysis follows.

## II.  EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).  To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted).  Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034

(2004). Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III. HABEAS REVIEW

Recently, the Eleventh Circuit opined that federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits. Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 2021 WL 1240954 (U.S. Apr. 5, 2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Indeed, relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

6

determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.

This high hurdle is not easily surmounted; if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)). Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing

evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589). As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 2021 WL 1240957 (U.S. Apr. 5, 2021). To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687). As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. Finch v. Vaughn, 67 F.3d 909, 914 (1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity. Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible in light of the record.

Finally, the Eleventh Circuit warns:

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so. Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted). Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, No. 20-7182, 2021 WL 1074184 (U.S. Mar. 22, 2021).

## V. GROUND ONE

**Ground One: ineffective assistance of trial counsel for failure to object to the state's amended information.**

Petitioner raised this claim in ground one of his Amended Motion for Post Conviction Relief, pursuant to Rule 3.850, Florida Rules of Criminal

Procedure. Ex. NN at 3-7. He claimed that trial counsel was ineffective for failure to object to the state filing an amended information listing Deputy Yeomans as the victim in count one, the aggravated assault count. The state responded. Ex. PP at 3. The trial court, relying on the Strickland two-pronged standard, denied the post-conviction motion. Ex. UU at 2-3. The First District Court of Appeal (1st DCA) affirmed per curiam. Ex. WW. The mandate issued December 7, 2018. Ex. XX. Of import, as the state court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected Petitioner's claim based on Strickland.

Attached to the Petition is a copy of the Putnam County Sheriff's Offense Report dated October 12, 2014. (Doc. 1-2). In pertinent part it states:

> On October 12, 2014 I responded to the listed location in reference to a[n] assault with a firearm complaint.
>
> Upon arrival I met with the victim, Aronah Mc[K]innon who flagged me down and had me follow her to 105 Broadway Street in San Mateo to make contact with the suspect, Jammie Simmons.
>
> Upon arriving on Broadway, I approached the area where I approached the area where McKinnon said she last saw Simmons, (105 Broadway St.). As I entered the rear of the property between the residence and a tan metal shed, I spotted a black male with a small semi-auto black handgun, which appeared to me to be around the size of a 9mm. **The black male was**

holding the gun in his right hand with the mussel [sic] facing up and the body of the gun near his face and [sic] if he was going to ambush someone. I immediately gained cover behind a [sic] and began giving loud verbal commands to the subject, who was later identified as Jammie Simmons, to drop the gun. When Jammie noticed I was a Law Enforcement Office[r] he then turned away and walked behind the shed as I continued to give him commands. Approximately 5 to 10 seconds later, Simmons returned from behind the shed with his hands above his head. Simmons was then ordered to the ground where he was safely secured. After Simmons was searched for weapons. No weapon was located on Simmons' person.

Id. at 2 (emphasis added).

The Offense Report provides that Sergeant Roberts located the gun under the shed, covered with leaves and dirt. Id. Officer Yeomans retrieved the gun and secured it in the trunk of his patrol car. Id. Upon returning to the office, Officer Yeomans placed the gun in an evidence locker. Id.

The record demonstrates the following. Initially, Petitioner was charged by an October 22, 2014 Information with aggravated assault (deadly weapon) with the victim named as Aronah Lavette McKinnon; possession of a firearm by a convicted felon; and resisting an officer, Anthony Yeomans, without violence. Ex. A. Petitioner, through counsel, filed a motion to suppress the firearm. Ex. M. Prior to trial, Petitioner was charged by a

September 16, 2015 Amended Information with aggravated assault on a law enforcement officer (firearm) with the victim named as Anthony Yeomans (count one); possession of a firearm by a convicted felon (count two); and resisting an officer, Anthony Yeomans, without violence (count three). Ex. C. On that same date, the trial court conducted a hearing on the motion to suppress. Ex. N.

At the inception of the suppression hearing. the prosecutor announced that count one, formerly the charge of aggravated assault with a firearm on victim McKinnon, is now aggravated assault with a firearm on law enforcement officer Yeomans. Id. at 4. The prosecutor told the court new count one is still a second degree felony. Id. The prosecutor explained the reason for the new information: "is it [sic] essentially is an oversight on my part, which I should have done in the beginning, so it's not any – anyone's fault but my own (indiscernible) at this time." Id. at 5.

At the suppression hearing, the state called Deputy Yeomans. Id. at 8. He attested that when he approached the house, someone began screaming, "[t]here he is." Id. at 10. Deputy Yeomans testified he saw a black male walking through the yard around the shed. Id. at 11. Deputy Yeomans described his encounter with Petitioner:

A     When he came around and I made contact with him he had his right hand behind his head, and at the point he started drawing --

Q     What did he have in his right hand?

A     A black firearm.

Q     Okay.  A handgun?

A     Yes.

Q     Did you automatically recognize it as a gun?

A     Yes.

Q     How was he holding the gun initially?

A     Behind his head with the muzzle up.

Q     And what did he do with that gun?

A     **He began to point it in my direction.**

Q     Okay.  How far from you was he when this was happening?

A     Ten to twelve yards.

Q     Were you afraid for your safety at that point?

A     Yes.

Q     What did you do?

A     I began giving commands after I got cover behind the vehicle that was parked.

Q     Okay.

A       Gave loud verbal commands to drop the gun and
--

Q       Did he immediately comply?

A       No.

Q       What did he do?

A       He stood there for a few seconds and retreated back behind the shed where he came from.

Q       How was he holding the gun when he was standing there?

A       **Full grip pointed in my direction.**

Id. at 11-12 (emphasis added).

The prosecutor then asked Deputy Yeomans if he saw "the individual who had the gun and pointed it in your direction in the courtroom today?" Id. at 13. Deputy Yeomans responded in the affirmative and identified Petitioner as that person. Id.

On cross-examination, Jill Barger, defense counsel, asked numerous questions concerning the manner in which Petitioner was carrying the gun throughout the incident. Id. at 22. Based on the record, it is apparent that Deputy Yeomans was gesturing while he was responding to counsel's questions. Id. ("He had his hand behind his head like this, and when he walks around the corner he -- just like that."). Deputy Yeomans said the muzzle was

up, meaning the barrel was pointed up. Id. Ms. Barger then asked, "[b]ut when you just demonstrated, you were pointing – it almost looked to me as if the barrel had been pointing toward the ground." Id. Deputy Yeomans explained Petitioner was holding the gun at full grip, meaning it was impossible to hold the barrel down. Id. at 23. Deputy Yeomans confirmed that Petitioner moved his hand from behind his head and his hand started going down towards his face, drawing the weapon in Yeomans' direction. Id.

Ms. Barger then referred to Deputy Yeomans' report and his statement that the black male was holding the gun in his right hand with the muzzle facing up. Id. Deputy Yeomans stated he had reviewed the report, but he would look at it again. Id. After reviewing the report, Deputy Yeomans agreed that he stated the body of the gun was near the perpetrator's face. Id. at 24. Ms. Barger then asked, "[n]ow did he physically point the gun at you?" Id. Deputy Yeomans responded, "[n]o, not directly at me." Id.

Ms. Barger then inquired: "[a]nd is it accurate to say that when he started to bring the gun down that you really mean that he brought it down and he continued to bring it down, would that have put it by his side ultimately?" Deputy Yeomans answered: "[n]o, Ma'am. He was pulling his gun down to point it." Id. The court asked, "[p]ointing to what?" Id. Deputy Yeomans responded: "[t]o point his weapon. It was in my direction."

Id. Mr. Barger again asked if Petitioner pointed the gun directly at the deputy, and Deputy Yeomans said, "[n]ot directly at me."

On re-direct examination, this same line of questioning continued. Id. at 28. The prosecutor asked if Petitioner was "pointing the firearm" in the deputy's direction, and Deputy Yeomans responded yes. Id. at 29. On recross examination, Ms. Barger referenced Deputy Yeomans' deposition testimony and Deputy Yeomans admitted that when asked if Petitioner pointed the gun directly at the deputy, Deputy Yeomans had responded, "no, not directly at me." Id. at 31. Ms. Barger reminded Deputy Yeomans that earlier in the suppression hearing, she had asked him if Petitioner pointed the gun directly at the deputy. Id. at 32. Ms. Barger asked if Deputy Yeomans had said no, and if that was a correct assessment of his testimony. Id. He responded yes, that was correct. Id.

In its Order denying the Rule 3.850 motion, the court found there were no grounds to object to the amended information as the information was amended prior to trial, supplanting the original information. Ex. UU at 3. As such, the court found Petitioner was adequately put on notice of the charges against him.[3] Id. The court concluded counsel could not be found ineffective

---

[3] Petitioner, in his post-conviction motion, complained that the allegation against him in count one of the amended information was based on a false allegation (substituting Anthony Yeomans for Ms. McKinnon in count one) and resulted in a falsely pled uncharged offense.

for failing to make a pointless objection to the amended information. Id. Finally, the court found neither prong of Strickland had been met. Id. The 1st DCA affirmed. Ex. WW.

The trial court found counsel's conduct reasonable under the circumstances presented. Indeed, upon review of the record, the Court concludes counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms. Strickland. Ms. Barger's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding.[4] Although Ms. Barger did not object to the amended information, she vigorously argued that the previously filed motion to suppress should be granted. At the hearing, she effectively cross-examined Deputy Yeomans, using both the offense report and the deputy's deposition testimony.

---

Ex. NN at 5. Petitioner complained that counsel's failure to object to the amended information prejudiced the defense. Id.

[4] The Fourteenth Amendment provides any state shall not deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. 14. To the extent a Fourteenth Amendment claim was raised and addressed, the adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this Fourteenth Amendment claim because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings. Therefore, AEDPA deference is due, or alternatively, Petitioner is not entitled to federal habeas relief on a claim raised pursuant to the Fourteenth Amendment.

Although there was quibbling over exactly how Petitioner held the gun or how he directed the gun, ultimately, Deputy Yeomans testified at the suppression hearing that when Petitioner brought the gun down from beside his face (muzzle up), he did not point the gun directly at the deputy but pointed the gun in the direction of the deputy. The record shows defense counsel effectively used both the offense report and Yeoman's deposition testimony on cross-examination to bring home the fact that Deputy Yeomans had previously stated that Petitioner at first held the gun beside his face, muzzle up, and, when he brought the gun downwards, he did not point the gun directly at the officer.

As the proposed objection would have been pointless, counsel cannot be deemed ineffective for failure to present such an objection. Indeed, a defense attorney need not make a meritless objection or motion that would not have obtained relief. Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019). In failing to satisfy the performance prong of Strickland, Petitioner cannot prevail on his claim of ineffective assistance of trial counsel. Thus, Petitioner failed to satisfy the performance prong of Strickland. The trial court also found Petitioner failed to satisfy the prejudice prong. Indeed, as any objection to the amended information would have been pointless, Petitioner was not prejudiced by counsel's conduct.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective. Thus, Petitioner has failed to demonstrate either a Sixth or Fourteenth Amendment violation.

In denying post-conviction relief, the trial court properly applied the two-pronged Strickland standard of review. Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on Strickland. Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry. Furthermore, the 1st DCA affirmed the decision of the trial court.

Upon due consideration, the Court finds the state court's determination is consistent with federal precedent. Petitioner failed to satisfy either the performance or prejudice prongs. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Ex. WW. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an

unreasonable determination of the facts. Therefore, ground one is due to be denied.

## VI.   GROUND TWO

**Ground Two:   ineffective assistance of trial counsel for informing Petitioner that Officer Yeomans could not be impeached by his prior inconsistent statements.**

Petitioner raised this claim in his Supplemental 3.850 Motion for Post-Conviction Relief.  Ex. QQ.  He argued Ms. Barger affirmatively misadvised him that Deputy Yeomans could not be impeached by his prior inconsistent statement that Petitioner did not point a weapon at him.  The trial court summarily denied this ground, relying on the Strickland two-pronged standard.  Ex. UU.  The 1st DCA affirmed per curiam.  Ex. WW.  As the state court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected Petitioner's claim based on Strickland.

The record demonstrates the court rejected Petitioner's claim of ineffective assistance of trial counsel for informing Petitioner that Officer Yeomans could not be impeached by his prior inconsistent statements.  Ex. UU at 4.  In making this decision, the trial court found "no inconsistency in Deputy Yeoman's testimony in this regard."  Id. at 4.  The court found Deputy Yeomans consistently testified that Petitioner did not point the gun directly at

the deputy, but rather, the deputy attested, as Petitioner began bringing the gun down, he pointed the gun in the deputy's direction. Id. Thus, assuming this alleged conversation occurred between Petitioner and his defense counsel, counsel's "advice was legally correct." Id. As such, the court found Petitioner failed to satisfy either prong of Strickland. Id.

The Court acknowledges the Offense Report presents a rather abbreviated rendition of the events, without addressing Petitioner's movements with the gun from the time Deputy Yeomans first saw him and when Petitioner turned away and walked behind the shed. At most, the report states Petitioner was holding his gun in his right hand with the muzzle facing up, with the body of the gun near Petitioner's face when the officer first encountered Petitioner. (Doc. 1-2 at 2).

In his testimony at the suppression hearing, Deputy Yeomans admitted that Petitioner did not point the gun directly at him, but Deputy Yeomans repeatedly stated that as Petitioner brought the gun down from near his face, he pointed the gun in the deputy's direction. Notably, Deputy Yeomans testified during his deposition testimony, when asked if Petitioner physically pointed the gun at the deputy, Deputy Yeomans said no, not directly at me.

Under the circumstances presented, even assuming defense counsel gave the advice Petitioner alleges, such advice did not deprive Petitioner of

constitutionally effective counsel. Although the deputy may have been parsing his words, he was not inconsistent in his testimony that Petitioner never directly pointed the gun at him but instead he attested, when Petitioner brought the gun down, he pointed it in the deputy's direction. In failing to satisfy the performance prong of <u>Strickland</u>, Petitioner cannot prevail on his claim of ineffective assistance of trial counsel.

Of additional significance, the Court found Petitioner failed to satisfy the prejudice prong. The record shows defense counsel did use the deposition for impeachment purposes at the suppression hearing, and although it helped clarify what the deputy had previously attested to when asked if Petitioner physically pointed the gun at the deputy (the deputy stated Petitioner did not point the gun directly at him), the deputy also testified that when Petitioner brought the gun down from beside his face, he pointed it in the deputy's direction. Thus, even if counsel's alleged advice missed the mark, there was no prejudice because any failure on defense counsel's part to advise Petitioner that Deputy Yeomans could be impeached with his prior testimony was of no consequence because Deputy Yeomans was insistent that when the Petitioner brought the gun down, it was pointed in the deputy's direction although not pointed directly at him.

The 1st DCA affirmed the decision of the trial court applying the Strickland standard of review and denying Petitioner's claim of ineffective assistance of counsel. Ex. WW. The Court finds the state court's determination is consistent with federal precedent. Although unexplained, the 1st DCA's decision is entitled to AEDPA deference. Applying the look-through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Ground two is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. As such, the Court finds Petitioner is not entitled to habeas relief on ground two.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.** [5]

---

[5] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find

Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of May, 2021.

UNITED STATES DISTRICT JUDGE

sa 5/28
c:
Jammie S. Simmons
Counsel of Record

---

the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.